HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THOMAS G LANDRETH,<br><br>            Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>            Defendants. | CASE NO. C20-5333RBL<br><br>ORDER<br><br>[Dkt. #s 10, 19, 20, 22, 25, AND 26] |

THIS MATTER is before the Court on the following motions: *Pro se* Plaintiff Landreth's Motion to Annex Additional Exhibits [Dkt. # 10]; Landreth's Motion for an Extension of Time [Dkt. # 19], Landreth's Motion to Un-Redact Information from the Bureau of Land Management or the Bureau of Indian Affairs [Dkt. # 20]; the United States' Motion to Stay Initial Disclosure Deadlines Pending Resolution of its Motion to Dismiss [Dkt. # 22]; The Quinault Indian Nation's Motion to Dismiss [Dkt. # 25]; and the United States' Motion to Dismiss [Dkt. # 26].

Landreth owns property abutting Lake Quinault in the Olympic National Park. This is at least his fourth attempt to obtain a judicial determination that the United States does not own the waters of and submerged lands under Lake Quinault (up to the ordinary high water mark) in trust for the benefit of the Quinault Indian Nation (QIN), but rather that Washington State owns those

lands and the United States or QIN has tortiously converted them. He claims the United States owes him a duty to protect his riparian rights. He seeks "quiet title" and $250,000 damages.

Landreth was a plaintiff in *North Quinault Properties, LLC, et al. v Quinault Indian Nation et al.*, Cause No. 14-cv-6025RBL. This Court dismissed QIN and the Washington State Department of Natural Resources on May 5, 2015. A Judgment was entered on June 9, 2015, and Landreth did not appeal. [*See* Dkt. #s 23, 24, and 25 in that case].

Landreth sued again in state court, and lost. *N. Quinault Properties, LLC v. State of Washington*, Washington Superior Court, Thurston County, Case No: 15–2–01809–1, *aff'd.,* 197 Wash. App. 1056 (2017). He sued a third time in the Federal Court of Claims, and lost. *Landreth v. United States*, No. 1:18-cv-00476, 144 Fed. Cl. 52, 54–55 (July 24, 2019), *aff'd.,* 797 F. App'x 521, 522 (Fed. Cir. 2020).

Landreth's new lawsuit asserts claims for (or at least quotes authorities discussing) the tort of conversion, the Quiet Title Act, the Equal Footing Doctrine, Public Trust Doctrine, and the 14th Amendment, among others. All appear to relate to his claim that QIN does not own the area between the low- and high-water marks (in front of his property, that land is 75 feet by 40 feet). It does not appear that he claims ownership of that area, but instead claims the QIN does not own it (and Washington State does). He seeks to enforce his riparian rights despite QIN's determination to not allow adjacent landowners to use the lake.

The United States seeks dismissal, arguing that Landreth has not alleged and cannot allege that it did any act (or failed to do any act) causing his claimed injury. It claims it has sovereign immunity, depriving this Court of subject matter jurisdiction over Landreth's claims. It also argues that Landreth cannot state a claim under the Quiet Title Act (QTA) 28 U.S.C § 2409a because he does not claim ownership of the "disputed land"—adjacent to his property, between

the Lake's ordinary high and low water marks—and even if he did, the QTA specifically does not waive sovereign immunity where the disputed property is "trust Indian land."

QIN similarly seeks dismissal of all Landreth's claims against it, arguing that it has sovereign immunity from suit, which it has not waived, and that the QTA bars the relief Landreth seeks. It suggests that Landreth's Motion to Annex [Dkt. # 10] additional documents to his Complaint might be construed as an amended complaint, and its Motion to Dismiss appears to address the complaint including the proposed annexed exhibits. For that reason, Landreth's Motion to Annex Additional Exhibits [**Dkt. # 10**] is **GRANTED**.

A complaint must be dismissed under Rule 12(b)(1) if, considering the factual allegations in a light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III Section 2 of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *See Baker v. Carr*, 369 U.S. 186, 198 (1962); *see also D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); 28 U.S.C. §§ 1331 and 1346. When considering a motion to dismiss under Rule 12(b)(1), a court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *see also Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). A federal court is presumed to lack subject matter jurisdiction until the plaintiff establishes otherwise. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *see also Stock West, Inc. v.*

*Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Landreth bears the burden of establishing subject matter jurisdiction. *See Stock West*, 873 F.2d at 1225.

The United States points out that under the 1855 Treaty of Olympia, all of Lake Quinault is within the Quinault Reservation. *See Quinault v. United States*, 102 Ct. Cl. 822 (1945). It argues that it has sovereign immunity and that Landreth has not and cannot tie his alleged injury to any act or omission of the United States over the past century.

Where a claim is asserted against the United States, the question of subject matter jurisdiction is inextricably tied to the doctrine of sovereign immunity. *See, Roberts v. United States*, 498 F.2d 520, 525 (9th Cir. 1974), *cert. denied*, 419 U.S. 1070 (1974) (axiomatic that a congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States). And any action against the United States begins with the "assumption that no relief is available." *Tucson Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1988). It is therefore the burden of any party advancing a claim against the United States to plead and prove that a statutory waiver of sovereign immunity exists. If the claimant fails to carry that burden, the Court has no jurisdiction to entertain the claim. *See Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983), *cert. denied*, 466 U.S. 958 (1984).

The United States argues that Landreth has no colorable claim under the QTA because he does not claim that he owns the disputed area, but rather that Washington State does (and QIN does not). Such a claim is not one within the QTA. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215-225 (2012). Thus, it claims, the QTA is not a waiver of sovereign immunity allowing Landreth to assert such a claim against the United States here.

Furthermore, and in any event, the QTA expressly does *not* include a waiver of sovereign immunity where the disputed land is Indian land:

> The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. *This section does not apply to trust or restricted Indian lands*[.]

28 U.S.C. § 2409a(a) (1978) (emphasis added). *See State of Alaska v. Babbitt*, 38 F.3d 1068 1072 (9th Cir. 1994); *and United States v. Mottaz*, 476 U.S. 834, 843 (1986). The QTA also includes a 12-year limitations period, which would have accrued when QIN first started treating the "disputed" property as its own. The United States points out that it did so at least three times that Landreth has identified, the latest of which was 1977.

Landreth's response does not address these issues. Instead, he repeats his allegations that the Lake is navigable water, and that it is in the National Park. He reiterates his core factual claim that QIN engaged in an "armed take over" of the navigable lake in 2013, when it decided to close Lake Quinault to non-Indian users, including those with waterfront property on the lake.

The Court does not have subject matter jurisdiction over Landreth's QTA claim against the United States and its Motion to Dismiss on that basis is **GRANTED,** and Landreth's QTA claim is **DISMISSED**.

The United States also argues the Court does not have subject matter jurisdiction over Landreth's conversion claim, if he indeed asserts such a claim against it. Landreth seeks $250,000 from the United states for the tort of conversion. Tort claims against the United States must be filed under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b); 2671-2680; *and see Brown v. Bode Constr.*, No. 16-CV-01148-JSC, 2016 WL 1588382, at *3 (N.D. Cal. Apr. 20, 2016). The FTCA requires a claimant to file an administrative claim as a prerequisite to filing a

1  lawsuit. The United States points out that Landreth did not do so. The United States' Motion to

2  Dismiss Landreth's tort claim against it is **GRANTED** and that claim too is **DISMISSED**.

3  Furthermore, this Court does not have jurisdiction over Landreth's claim for money

4  damages over $ 10,000. Under the "Tucker Act," 28 U.S.C. § 1491, the United States Court of

5  Federal Claims has exclusive jurisdiction over such claims. *Lexington Ins. Co. v. United States*,

6  No. 3:20-CV-05038-RBL, 2020 WL 3000777, at *3 (W.D. Wash. June 4, 2020).

7  For these reasons, the United States' Motion to Dismiss [**Dkt. # 26**] is **GRANTED** and

8  Landreth's claims against it are **DISMISSED** for lack of subject matter jurisdiction.

9

10  Native American tribes and their governing bodies possess sovereign immunity and may

11  not be sued absent express and unequivocal waiver of immunity by the tribe or abrogation of

12  immunity by Congress. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–59 (1978).

13  As a federally recognized Indian Tribe, QIN enjoys sovereign immunity from suit. *See*

14  *Bodi v. Shingle Springs Bank of Miwok Indians*, 832 F.3d 1011, 1016 (9th Cir. 2016) ("Among

15  the core aspects of sovereignty that tribes possess is the common-law immunity from suit

16  traditionally enjoyed by sovereign powers.") (Internal quotations and citations omitted).

17  Sovereign immunity bars suit absent a clear waiver, congressional abrogation, or application of

18  the *Ex Parte Young* exception. *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indians*

19  *Tribe of Oklahoma*, 498 U.S. 505, 509 (1991); *see also Michigan v. Bay Mills Indian*

20  *Community*, 134 S. Ct. 2024, 2035 (2014). A waiver "cannot be implied but must be

21  unequivocally expressed" *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978), and a waiver

22  as to one claim does not waive sovereign immunity as to other claims. *See Oklahoma Tax*

23  *Comm'n*, 498 U.S. at 509.

24

QIN's motion is based on a simple and powerful argument: it has not waived its sovereign immunity, and the Court does not have subject matter jurisdiction over Landreth's claims against it:

> *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788, 134 S. Ct. 2024, 188 L.Ed.2d 1071 (2014) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)). Tribal sovereign immunity "is a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes of the Ft. Berthold Reservation v. Wold Eng'g, P.C.*, 476 U.S. 877, 890, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986). It shields Indian tribes, for both on- and off-reservation conduct, from suit absent unequivocal and express authorization by Congress or clear waiver by the tribe. *Bay Mills Indian Community*, 572 U.S. at 789. Courts will not assume such an abrogation lightly. *Id*. at 790.

[QIN's Motion, Dkt. # 25 at 14].

The bulk of Landreth's Response does not address this argument, but instead describes the history of the land, the Treaty of Olympia, the QIN reservation, Washington State, and Olympic National Park. He reiterates that the lake is navigable and claims that under Washington law, the public has an interest in the use of navigable waters and their underlying lands. He claims that the Court has jurisdiction to resolve disputes over the lake and the Treaty:

> This Court definitely has subject matter jurisdiction over my complaint for Quiet Title and the Tort activities of the Quinault Indian Tribe/Nation. The entire navigable Lake Quinault is surrounded with federally reserved land for recreational purposes and the making of any decision regarding the navigable Lake Quinault is a Federal Question.

[Landreth's Response, Dkt. # 27 at 32].

Landreth's claims are inconsistent with settled law.

QIN also argues that Landreth cannot state a claim to "remove the cloud of ownership on his property" under the QTA:

> The Indian land exception to the QTA's waiver of the United States' immunity creates an "insuperable hurdle" to suits to challenge the government's interest in Indian trust or restricted land. *Id.* at 1075. It also applies without regard to whether there is an alternate means of review and may leave a party with no forum for its claims. *Id.* at 1077 (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990)).

[Qin's Motion Dkt. # 25 at 20]. This is correct, and Landreth seems to concede as much, though he points out that that would leave him with no recourse. His frustration is understandable, but the fact that he has no remedy is not a basis for inferring a waiver of sovereign immunity, or ignoring the QTA's plain language.

Finally, Landreth's remaining claims (for money damages, possible criminal prosecution, and potential renegotiation of the Treaty of Olympia) are baseless and do not cure the fatal-to-his-claims jurisdictional problem.

QIN's Motion to Dismiss [**Dkt. # 25**] for lack of subject matter jurisdiction is **GRANTED** and Landreth's claims against QIN are **DISMISSED**. Because the Court does not have the power to adjudicate his claims, the dismissal is without prejudice. Landreth should not view that legal determination as an invitation to file a fifth lawsuit on this topic.

All remaining Motions [Dkt. #s 19, 20, and 22] are **DENIED** as moot. The matter is closed.

IT IS SO ORDERED.

Dated this 29th day of July, 2020.

Ronald B. Leighton
United States District Judge